UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 04-12420-RGS

Metropolitan Life Insurance Company,
                Plaintiff

vs.                                                                                     **Affidavit of Donna M. Nolan**

JESSIE JEAN PETKUS,
DONNA M. NOLAN,
                Defendants

I, Donna M. Nolan, on oath, depose and state as follows:

1. I was married to James J. Petkus from 1984 until 1991. We had two children, a daughter, born in 1984 and a son, born in 1986. At the time of James' death on December 16, 2003, they were 19 and 17 years old. They were at that time and remain now to be full time students. They are dependant upon me for support.

2. When James learned that we were going to have our first child, he designated me as his sole beneficiary of his life insurance policy through his employer which was then Boston Gas Company. It is my understanding that as a result of our separation agreement, that any life insurance proceeds I receive are for the benefit of our two children.

3. Following our divorce, James always complied with his support obligations contained in our separation agreement. He never requested that those obligations be modified. Attached as Exhibit A is the excerpt of our separation agreement (Norfolk Probate and Family Court, Docket No. 91D-669-D1) dealing with life insurance.

4. It has been confirmed to me by both Keyspan Corporation, as the successor to Boston Gas Company and MetLife that the designation of me as the sole beneficiary of James' life insurance was on file with the location where James worked (Exhibit B).

5. I do not believe that James would breach his financial obligations to his children by designating another party as a beneficiary to his life insurance prior to the emancipation of his children.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 04-12420-RGS

Metropolitan Life Insurance Company,
                      Plaintiff

vs.

**Statement Concerning the
Deposition of
Jessie-Jean Petkus**

Jessie-Jean Petkus,
Donna M. Nolan,
                      Defendants

Attached are the following true and accurate pages of the Deposition of Jessie-Jean Petkus, dated July 29, 1005.

        Page 1
        Page 4
        Pages 8 – 12
        Pages 34 – 36

DONNA M. NOLAN
By her attorney,

_/s/ Joseph A. MacRitchie_
Joseph A. MacRitchie, Esq.
21 McGrath Highway, Suite 303
Quincy, MA 02169
Telephone (617) 770-2115
BBO No. 312450

Dated August 22, 2005

# ORIGINAL

Vol. I
Pages 1 - 38
Exhibits - 0 -

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NO. 04-12420-RGS

---

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, | * |
| Plaintiff | * |
| | * |
| | * |
| vs. | * |
| | * |
| | * |
| DONNA M. NOLAN, | * |
| JESSIE JEAN PETKUS, | * |
| Defendants | * |

---

DEPOSITION of JESSIE JEAN PETKUS, a witness called by and on behalf of the Defendant, Donna M. Nolan, pursuant to the provisions of the Federal Rules of Civil Procedure, before Heather S. Cruz, a Registered Professional Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the offices of DiFazio & DiFazio, 119 Broad Street, Weymouth, Massachusetts, on Friday, July 29, 2005, commencing at 2:15 p.m.

*STENOGRAPHIC RESOURCES*
*98 Mohawk Road*
*Raynham, MA 02767*
*508.823.3069/efax 208.246.0832*
*www.stenographicresources.com*

Case 1:04-cv-12420-RGS   Document 18   Filed 08/23/2005   Page 4 of 13

P R O C E E D I N G S

      **JESSIE-JEAN PETKUS**, having been satisfactorily identified by a United States Passport and duly sworn by the Notary Public, was examined and testified as follows:

      MR. MacRITCHIE: Ken, can we have what we call the usual stipulations, reserving objections except as to form until trial?

      MR. DIFAZIO: Read and sign.

      MR. MacRITCHIE: Read and sign the deposition. Not necessarily before a notary. I don't really care about that.

      MR. DIFAZIO: That's fine. Thank you.

**EXAMINATION BY MR. MacRITCHIE:**

Q  Could you state your full name, please?
A  Jessie Jean Petkus.
Q  Now Mrs. Petkus, have you ever had your deposition taken before?
A  No.
Q  Do you understand that I will be asking you questions, you'll be responding under oath?
A  Yes.
Q  Okay. And you also understand that you'll have to verbalize your responses. You won't be able to nod or

8

```
 1       insurance?
 2  A    No.
 3  Q    Okay.  Getting back to your residence.  How long have
 4       you owned that property?
 5  A    Since November of '91.
 6  Q    Okay.  Are you currently married?
 7  A    No.
 8  Q    What is your marital status?
 9  A    Widowed.
10  Q    You were married to James Petkus?
11  A    Yes.
12  Q    And when did you marry him?
13  A    December 16, 1999.
14  Q    And he passed away?
15  A    December 16, 2003.
16  Q    Were you ever married to anybody else?
17  A    No.
18  Q    Do you have any children?
19  A    No.
20  Q    When you married James Petkus, he had children, is that
21       correct?
22  A    Yes.  Two children.
23  Q    And how would you describe his relationship with the
24       children, with his children?
```

9

1  A    Good.
2  Q    Did he see them on a regular basis, did they visit with
3       him?
4  A    Yes. Yes.
5  Q    And did they come to your home often?
6  A    At times. They were always welcome.
7  Q    And how was your relationship with them?
8  A    It was fairly good. You know, it was good.
9  Q    At the time that you married James Petkus, did you know
10      that he was under a -- that he had certain obligations
11      to these children?
12 A    Yes.
13 Q    And what was your understanding when you got married as
14      to the obligations that he had to his children?
15 A    His weekly child support and half of things that needed
16      to be for the children.
17 Q    So that you understood that some property that he owned
18      would eventually, if he passed away, portions would go
19      to his children, is that your understanding?
20 A    Property in what sense?
21 Q    Well, you said that half of things would go to his
22      children.
23 A    No, I didn't say half of things. Half of if they
24      needed something, the children, he would pay half of

```
 1      like say they needed a new bicycle.  He would pay for
 2      half the bicycle.  Or if they were going to dance
 3      lessons, it would be half.  Over and above the
 4      children's child support.
 5   Q  Very good.  I misunderstood you.  In addition to child
 6      support, he would on occasion pay additional funds to
 7      cover added things that the children needed?
 8   A  Yes.  Yes.
 9   Q  Okay.  At some point did you understand that his older
10      child was a college student?
11   A  Yes.
12   Q  And what was your understanding with respect to
13      expenses relating to college?
14   A  He was paying half of -- she was at Bridgewater at that
15      time.
16   Q  Okay.  And do you know the educational circumstances of
17      the younger child, of his son?
18   A  He was at Arch Bishop Williams at that time.
19   Q  And in addition, was he paying half of the tuition for
20      Arch Bishop Williams?
21   A  Yes.
22   Q  And that was in addition to his weekly support
23      obligations?
24   A  Yes.
```

```
 1  Q    Were you familiar with the order of the Probate Court
 2       that set out these things?  Did you ever see the court
 3       order or the agreement that they had?
 4  A    Yes.
 5  Q    And did you ever have an opportunity to review that
 6       with any detail?
 7  A    We spoke of it.  Yes.
 8  Q    And did you ever meet with an attorney to ask about the
 9       obligations that Mr. Petkus had?
10  A    At his request we had seen an attorney.
11  Q    So he and you went to an attorney to better understand
12       his obligations?
13  A    Yes.
14  Q    And that attorney reviewed the agreement and gave some
15       advice to Mr. Petkus?
16  A    Yes.
17  Q    And were you present at the time that that advice was
18       given?
19  A    Yes.
20  Q    Okay.  Who was that attorney?
21  A    He was in Hull.  I can't think of his name off the top
22       of my head.  But I could get that information for you.
23  Q    Okay.  And do you remember whether there were any
24       discussions about life insurance with the attorney?
```

12

1  A   Not that I recall.
2  Q   Okay. You don't recall whether or not there were, is
3      that what your response is? You don't recall
4      specifically that topic being discussed?
5  A   No. There were various topics, but I mean, you know.
6  Q   But I just want to clearly understand so that I don't
7      misunderstand anything. You don't recall that topic
8      being discussed or you don't -- or you recall that it
9      was not discussed? And I'm talking specifically about
10     life insurance.
11 A   I couldn't say specifically. I really couldn't, you
12     know.
13 Q   Okay.
14 A   I think it was basically for the child support portion.
15 Q   And as a result of that conversation with that
16     attorney, did Mr. Petkus take any action with respect
17     to trying to get a modification to change his
18     obligations in any way?
19 A   No.
20 Q   Okay. And as far as you know, did Mr. Petkus always
21     comply with his obligations with respect to that
22     Probate Court Order?
23 A   Yes.
24 Q   All right.

1  Q  How many times?
2  A  I don't know. I think it was a couple of times. Not
3     specific on.
4  Q  On each of those occasions, did you consider having his
5     name added to the deed?
6  A  Yes.
7  Q  And it was his decision not to be added to the deed?
8  A  Yes.
9  Q  After having filed the various forms with Keyspan, did
10    you have occasions to have specific -- do you remember
11    any specific discussions with James relative to that?
12 A  In regards to?
13 Q  To him having filed forms whether it's the life
14    insurance or the retirement or the Vanguard account,
15    designating you as a beneficiary, were there -- did you
16    ever have any discussions with him relative to his
17    having done that?
18 A  He said he did it.
19 Q  Okay. On more than one occasion?
20 A  Maybe once or twice, but it wasn't a dinnertime -- like
21    we didn't discuss it.
22 Q  I understand. Was there ever any discussions with any
23    third party, with an attorney, with a financial
24    advisor, with a family member, did anybody else ever

```
 1     hear him acknowledge that he had filed those forms?
 2  A  Those were private issues.
 3  Q  Did you ever have an opportunity to meet with a
 4     financial advisor, someone who might advise you on --
 5  A  No.  No.
 6  Q  Did you ever have -- when you met with the attorney in
 7     Hull, did you ever have any discussions about your
 8     financial situation, would that have been discussed?
 9  A  Finances were discussed.
10  Q  Okay.  But do you know whether this specific issue
11     about your having filed -- his having filed
12     beneficiaries forms, do you remember whether that was
13     discussed with that attorney?
14  A  Not to my knowledge.  Not that I recall off the top of
15     my head.  No.
16  Q  Were there ever any family members that he had or that
17     you had that you would have confided this type of
18     thing; did you ever have any discussions with any third
19     party?
20  A  No.
21  Q  Did he have siblings?
22  A  Yes.
23  Q  How many siblings does he have?
24  A  He has an older brother, older sister, and a younger
```

1   sister.
2 Q Okay. And you would never have had any discussions
3   with any of those siblings relative to the financial
4   affairs like that?
5 A May have discussed it, but it was nothing specific.
6 Q And how many siblings do you have?
7 A I have one brother.
8 Q Okay. And did you ever have an opportunity to discuss
9   this with him?
10 A No.
11 Q Okay. So I guess what I'm trying to lead up to, was
12   there any third party that could confirm a statement
13   that James may have made that he had filed this form?
14 A No. Not to my knowledge.
15          MR. MacRITCHIE: Okay. I don't believe I
16   have any further questions.
17          MR. DIFAZIO: Fine. Thank you.
18   (Whereupon, at 2:55 p.m., the deposition was
19   adjourned.)
20
21
22
23
24