**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**DOCKET NO. 04-12420-RGS**

---

**Metropolitan Life Insurance Company**
**Plaintiff**

**vs.**

**Jesse-Jean Petkus,**
**Donna M. Nolan,**
**Defendants**

---

**MEMORANDUM OF DEFENDANT, JESSE-JEAN PETKUS IN OPPOSITION TO DEFENDANT, DONNA M. NOLAN'S MOTION FOR SUMMARY JUDGMENT**

This Memorandum of Law is submitted in opposition to the Defendant, Donna M. Nolan's previously filed Motion for Summary Judgment.

It is the position of the Defendant, Jessie-Jean Petkus, that the Beneficiary Designation Form dated March 20, 2002 is signed by the Decedent, James J. Petkus and the signature has been authenticated. Further, that the execution of the form by the Decedent substantially complies with the requirements of the Plan and that the Defendant, Nolan's assertion that the 1984 Beneficiary Designation Form is a prior designation which was not on file with Metlife Recordkeeping unit and has been revoked by the March 20, 2002 Beneficiary Designation.

As a consequence, Jessie-Jean Petkus is the undisputed sole beneficiary of the policy, as provided by the policy itself.

Submitted herewith is the Defendant, Jessie-Jean Petkus's Concise Statement of the Facts and Additional Facts which indicates clearly that there are genuine issues of law and fact yet to be determined by the court.

Office of
KENNETH J. DI FAZIO
Attorney At Law
PO Box 422
WEYMOUTH, MA 02188
(781)335-2160

## ARGUMENT

A. Issues presented in Defendant Nolan's Motion for Summary Judgment

I. The only designation form on file names Donna M. Nolan as the sole beneficiary.

The Defendant Nolan indicates that the 1984 designation is on file at the employer because she is possession of a copy of an inter office memo that purports to indicate as such. The memo has not been forwarded to the Defendant Petkus and has not been produced by MetLife to Petkus. Further, it is unknown if the document is an original and whether it has been signed and by whom and whether the signature has been authenticated. Further, any designation form which may have been "on file" with the employer does not comply with the requirement that the designation form be on file with the Plan MetLife Recordskeeping unit. Therefore, at this time there exists an issue as to whether there was any beneficiary designation form filed in complete compliance with the Plan at the time of the Decedent's death. Defendant Petkus's position is that both the 1984 and the 2002 beneficiary designation forms substantially complied with the plan requirements and that the 2002 beneficiary form designation revoked the earlier filed 1984 beneficiary designation form. Or the court could find in the alternative that neither beneficiary designation form fully complied with the plan and the proceeds from the policy would be fully payable to the estate of James J. Petkus

II. If James Petkus had designated anyone other than Donna M. Nolan as beneficiary under the policy, he would have violated a state court order.

It is clear from the language within Exhibit VI of the Separation Agreement between the Decedent and Nolan that the agreement did not require that this particular policy was required to be the only policy which could serve to satisfy the obligations set forth within the Exhibit. The Decedent was free to utilize any and a number of policies to satisfy his obligation created by the separation agreement and therefore, his 2002 execution of the Beneficiary Designation Form may not be deemed a violation of a court order.

Office of
KENNETH J. DI FAZIO
Attorney At Law
PO Box 422
WEYMOUTH, MA 02188
(781)335-2160

III. If James Petkus had changed the beneficiary of his life insurance, such actions would have been inconsistent with his twelve year course of conduct.

Defendant's Nolan's contention that the 2002 change form is somehow not valid because it is not consistent with 12 years of the decedents conduct has no legal bearing on whether the 2002 beneficiary change form is valid and is entitled to be adhered to by the Plan. Further, the Decedent's execution of the 2002 beneficiary designation form is consistent with the decedent's past conduct.

The 2002 changing of the beneficiary form to designate ½ of the policy to each of the defendants is consistent with James J. Petkus complying with his obligations under the separation agreement as well as consistent with his course of conduct of supporting his children as well as his wife, Jessie-Jean Petkus. No modification of the agreement was necessary to be filed by the decedent because the 2002 beneficiary change resulted in him continuing to comply with his life insurance obligation under the agreement in that ½ of the policy proceeds (approx. $75,000.00) would still be designated for Nolan for the children in addition to a $25,000 John Hancock policy which designated Nolan as the beneficiary. Further, both children were at or near an age wherein they would not be considered minors at the time the decedent executed the 2002 beneficiary change form. This is consistent with the decedent's possible position that less money was necessary to be withheld since possibly only one of the children continued to be considered a minor. This thinking is consistent with MetLife's opinion that that the Judgment of Divorce is considered a QDRO and a portion of the QDRO may have expired.

IV. The Defendant, Jessie-Jean Petkus, can produce no credible evidence that James Petkus ever filed a new beneficiary designation form.

The facts are such that James Petkus did execute a March 20, 2002 beneficiary designation form and it remains unknown whether the form was filed with Keyspan, Human Relations, Voluntary Benefits or the like and subsequently misplaced or lost by any of the above locations. The remaining issue is whether the executed form is considered substantial

Office of
KENNETH J. DI FAZIO
Attorney At Law
PO Box 422
WEYMOUTH, MA 02188
(781)335-2160

compliance with the terms of the plan and whether his execution of the form revokes any prior designation of beneficiaries. It has not been determined that the decedent was ever issued a Summary Plan Description booklet by Boston Gas Company, the previous operator of the Plan, there is no evidence that Keyspan issued a Summary Plan Description to the Decedent and the form itself indicates only that after execution that the form be submitted to Voluntary Benefits which is an ambiguous unknown location. The form does not indicate anywhere within its four corners that the effectiveness of the document is contingent upon the delivery of the document to Voluntary Benefits. Therefore, the issue of whether the March 20, 2002 Beneficiary Designation controls remains very much unanswered.

B. Additional Issues of Law & Fact

I. The Metlife Recordkeeping unit maintains Keyspan's beneficiary data. The beneficiary designation form dated March 20, 1984 relied upon by Nolan was not on file with the Metlife Recordkeeping Unit and METLIFE in its January 10, 2004 letter to Donna Nolan Petkus initially indicated there was no record of a beneficiary. Since the March 20, 1984 was not filed with the Recordskeeping unit it can be considered that the beneficiary designation was not filed and therefore not controlling.

II. The interoffice memo which the Defendant Nolan relies to assert that the 1984 beneficiary designation had been filed has not been produced or authenticated to date therefore leaving open the issue of filing of the 1984 beneficiary designation form.

III. Ms. Nolan contends that the payment of the Plan benefits is controlled by the terms of her November 26, 1991 Judgment of Divorce. Jesse-Jean Petkus contends that no matter which beneficiary designation form is controlling (1984 or 2002), the Plan is an ERISA plan under Federal Law which preempts state law divorce decrees unless they are a Qualified Domestic Relations Order (QDRO). It has not been determined whether QDROs apply to employee welfare benefit plans, and if so, whether the language in the Judgment of Divorce satisfies the requirements of a QDRO as defined by ERISA, 29 U.S.C. s. 1056(d)(3), and if it is a QDRO whether it has expired in whole, in part, or not at all because Nolan's child, Jessica

Office of
KENNETH J. DI FAZIO
Attorney At Law
PO Box 422
WEYMOUTH, MA 02188
(781)335-2160

reached the age of majority. These issues remain unanswered and materially affect both the amounts and to whom benefits should be distributed to.

**CONCLUSION**

For the reasons stated, the Defendant, Jessie-Jean Petkus, has established that there are material issues of fact and of law which remain in dispute and are dispositive of the issue in this litigation as to who is entitled to the proceeds of the life insurance policy.

JESSE-JEAN-PETKUS
By her Attorney,

Kenneth J. DiFazio, Esq.
119 Broad Street
Weymouth, MA 02188
(781) 335-2121
BBO No. 556451

Dated: September 6, 2005

Office of
KENNETH J. DI FAZIO
Attorney At Law
PO Box 422
WEYMOUTH, MA 02188
(781)335-2160

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**DOCKET NO. 04-12420-RGS**

---

**Metropolitan Life Insurance Company**
**Plaintiff**

**vs.**

**Jesse-Jean Petkus,**
**Donna M. Nolan,**
**Defendants**

---

**DEFENDANT, JESSE-JEAN PETKUS'S CONCISE STATEMENT OF FACTS AND ADDITIONAL MATERIAL FACTS**

The Defendant, Jesse-Jean-Petkus, states the following concise statement of facts (as outlined and numbered consecutively from the Defendant, Donna M. Nolan's previously filed Statement of Undisputed Material Facts):

1. James J. Petkus ("Decedent") died on December 16, 2003. (Complaint, Paragraph 8, admitted by all.)

2. The Decedent was employed by Keyspan Corporation and its predecessor, Boston Gas Company. He was a participant in Keyspan's Employee Welfare Plan ("Plan"), governed by ERISA, 2a, USC, s1001, et seq. (Complaint, Paragraph 6, admitted by all.).

3. Donna M. Nolan is the former wife of Decedent; the mother of their two children who were 19 and 17 years old on the date of their father's death. Both were dependent upon their parents for support, as each is a full time student. (Complaint, Paragraph 2, Affidavit of Donna M. Nolan, Deposition of Jessie Petkus, Page 10, Lines 9-24).

Office of
KENNETH J. DI FAZIO
Attorney At Law
PO Box 422
WEYMOUTH, MA 02188
(781)335-2160

4. Jessie-Jean Petkus was the wife of the decedent, having been married to him for four years prior to his death. They had no dependents. (Deposition of Jessie-Jean-Petkus, Page 8, Lines 12-19.)

5. The Plan included basic employee term life insurance for which Metropolitan Life Insurance Company (MetLife) was claims administrator. (Complaint, Paragraph 7, admitted by all.)

6. The Decedent designated Nolan as the sole beneficiary on March 20, 1984. It has been confirmed with Boston Gas Company that his 1984 designation was on file with the Plan. (Complaint, Paragraph 11, Affidavit of Donna M. Nolan.) *Defendant, Jessie-Jean Petkus disagrees with movants statement regarding two elements in that 1) there has been no showing that an original designation form dated March 20, 1984 exists, and 2) that the form was filed with the MetLife recordkeeping Unit or Keyspan. (Affidavit of Jessie Jean Petkus.)*

7. The Decedent was obligated to designate Nolan as beneficiary of this life insurance policy by the separation agreement executed by the Decedent and Nolan. (Affidavit of Donna M. Nolan.) .) *Defendant, Jessie-Jean Petkus disagrees with movants statement regarding the fact that the Decedent was obligated to designate Nolan as beneficiary on "this" life insurance policy as the separation agreement does not specify a particular policy. (Exhibit VI of executed Separation Agreement between the decedent and Nolan, dated September 12, 1991, attached as Exhibit F)*

8. The Decedent always complied with his obligations under the separation agreement. (Deposition of Jessie-Jean Petkus, Pages 9-11.) *Defendant, Jessie-Jean Petkus disagrees with movants statement as her statement within her deposition were not a response to whether the decedent <u>always</u> complied with his obligations under the separation agreement, rather, her response was to the question as to whether the decedent paid child support and educational expenses for his children. (Deposition of Jessie-Jean Petkus, Pages 9-11.)*

Office of
KENNETH J. DI FAZIO
Attorney At Law
PO Box 422
WEYMOUTH, MA 02188
(781)335-2160

9. The Decedent was familiar with his obligations under the separation agreement. (Deposition of Jessie-Jean Petkus, Paragraph 12, Lines 15-19). *Defendant, Jessie-Jean Petkus disagrees with movants statement as her statement within her deposition was solely that she was aware that an attorney had reviewed the agreement with the decedent and gave the decedent some advice, not that the decedent was familiar with his obligations under the separation agreement. (Deposition of Jessie-Jean Petkus, Paragraph 12, lines 15-19.)*

10. The Decedent never sought to modify the separation agreement (Affidavit of Donna M. Nolan; Deposition of Jessie-Jean Petkus, Paragraph 12, Lines 15-19). *Defendant, Jessie-Jean Petkus disagrees with movants statement as her statement within her deposition was solely that she was of the belief that the Decedent did not seek to modify his obligations as a result of a conversation the decedent had with an attorney, not whether the Decedent never sought a modification of the separation agreement. (Deposition of Jessie-Jean Petkus, Paragraph 12, lines 15-19.)*

11. There is no record that the Decedent ever filed a designation of Jessie-Jean Petkus as a beneficiary of his life insurance policy. (Complaint, Paragraph 12, Neither admitted nor denied by either party.) *Defendant, Jessie-Jean Petkus disagrees with movants statement as she has produced a carbon copy of a MetLife form entitled "BENEFICIARY DESIGNATION" dated March 20, 2002 which the decedent signed in her presence. (Affidavit of Jessie-Jean Petkus.)*

12. Jessie-Jean Petkus has no evidence that a beneficiary designation form, naming her as a beneficiary, was ever filed with the Plan. (Deposition of Jessie-Jean Petkus, Pages 34-36.) *Defendant, Jessie-Jean Petkus disagrees with movants statement as she has produced a carbon copy of a MetLife form entitled "BENEFICIARY DESIGNATION" dated March 20, 2002 which the decedent signed in her presence. (Affidavit of Jessie-Jean Petkus.)*

13. The Summary Plan Description which applies to the Plan provides in part: "You may name whomever you wish as a beneficiary. Your beneficiary under the Basic Plan is the person or persons you have named on your beneficiary designation card....

Office of
KENNETH J. DI FAZIO
Attorney At Law
PO Box 422
WEYMOUTH, MA 02188
(781)335-2160

Furthermore, you may change your beneficiary designation at any time. You must do this in writing and file it with the Benefits Department." (Complaint, Paragraph 13, admitted by Nolan, neither admitted nor denied by Petkus.) *Defendant, Jessie-Jean Petkus disagrees with movants statement as neither MetLife nor Keyspan/Boston Gas have produced such a document evidencing that the decedent was ever informed of the requirement. (Affidavit of Jessie-Jean Petkus.)*

**DEFENDANT, JESSIE-JEAN PETKUS'S ADDITIONAL MATERIAL FACTS**

1. Jessie-Jean Petkus is in possession of a carbon copy of a METLIFE BENEFICARY DESIGNATION Form dated March 20, 2002 in which the decedent signed. (Copy attached as Exhibit A.)

2. A Certified Court Qualified Document Examiner, Mr. Charles M. Shure, has examined the METLIFE BENEFICARY DESIGNATION form dated March 20, 2002 signed by the decedent and has issued a report dated March 14, 2005 indicating that it is very probable to highly probable that the signature of the decedent is authentic. (Copy of report attached as Exhibit B.)

3. METLIFE has not received or produced any physical evidence of any communication from Keyspan, except what Nolan produced, that indicates either of the following: 1) that Boston Gas or Keyspan ever produced for the decedent a copy of the Summary Description Plan (SDP), 2) that Keyspan was in possession of a Beneficiary Description Form which has the Decedent's authenticated signature designating Nolan as 100% beneficiary, and 3) that Keyspan was in possession of any Beneficiary Description Forms signed by the Decedent. (METLIFE Letter undated (later confirmed to be October 1, 2004) to Attorney Kenneth J. DiFazio and Attorney Joseph A. MacRitchie Exhibit C.)

4. The Metlife Recordkeeping unit maintains Keyspan's beneficiary data. The beneficiary designation form dated March 20, 1984 relied upon by Nolan was not on file with the Metlife Recordkeeping Unit and METLIFE indicated that there was no record of

Office of
KENNETH J. DI FAZIO
Attorney At Law
PO Box 422
WEYMOUTH, MA 02188
(781)335-2160

beneficiary. (METLIFE Letter undated (later confirmed to be October 1, 2004) to Attorney Kenneth J. DiFazio and Attorney Joseph A. MacRitchie Exhibit C; Metlife letter dated June 3, 2004 to Attorney Kenneth J. DiFazio Exhibit D; MetLife letter dated January 10, 2004 to Donna Nolan Petkus Exhibit E.)

5. No one from Keyspan or Boston Gas has to date confirmed the receipt of Nolan's March 20, 1984 Beneficiary Designation Form. (Affidavit of Jessie-Jean Petkus and Metlife letter dated June 3, 2004 to Attorney Kenneth J. DiFazio Exhibit D.)

6. The March 20, 2002 Beneficiary Designation form signed by the Decedent contains an authentic signature of the Decedent and his execution of same prior to his death substantially complies with the terms of the Plan. (Affidavit of Jessie-Jean Petkus; Copy of Bradford Associates Report Exhibit B.)

7. The MetLife Beneficiary Form which was completed and signed by James J. Petkus on March 20, 2002 is confusing and ambiguous as it states that by filling it out and signing it, it creates a revocation of all prior beneficiaries. The form further instructs the person filling it out to submit it to Voluntary Benefits but does not designate where that location or department is neither does it state that the validity of the form is contingent upon the filing of it with the so-called Voluntary Benefits. (METLIFE BENEFICARY DESIGNATION dated March 20, 2002 in which the decedent signed. Copy attached as Exhibit A.)

8. Ms. Nolan contends that the payment of the Plan benefits is controlled by the terms of her November 26, 1991 Judgment of Divorce. Jesse-Jean Petkus contends that the Plan is an ERISA plan under Federal Law which preempts state law divorce decrees unless they are a Qualified Domestic Relations Order (QDRO). It has not been determined whether QDROs apply to employee welfare benefit plans, and if so, whether the language in the Judgment of Divorce satisfies the requirements of a QDRO as defined by ERISA, 29 U.S.C. s. 1056(d)(3), and if it is a QDRO whether it has expired in whole, in part, or not at all because Nolan's child, Jessica reached the age of majority. (METLIFE Letter undated (later confirmed to be

Office of
KENNETH J. DI FAZIO
Attorney At Law
PO Box 422
WEYMOUTH, MA 02188
(781)335-2160

October 1, 2004) to Attorney Kenneth J. DiFazio and Attorney Joseph A. MacRitchie Exhibit C.)

JESSE-JEAN-PETKUS
By her Attorney,

Kenneth J. DiFazio, Esq.
119 Broad Street
Weymouth, MA 02188
(781) 335-2121
BBO No. 556451

Dated: September 6, 2005

Office of
KENNETH J. DI FAZIO
Attorney At Law
PO Box 422
WEYMOUTH, MA 02188
(781)335-2160

EXHIBIT

MetLife

Metropolitan Life Insurance Company

# BENEFICIARY DESIGNATION

(Before Completing This Form, See The Reverse Side)

(Do not erase or attempt to make corrections, use a new form)

Group Certificate No. KeySpan Group Policy No. Insured's Social Security No. 011-42-831

(For GUL&VUL Only)

In accordance with the conditions of the Group Policy listed above, I hereby revoke any previous designations of primary beneficiary(ies) and contingent beneficiary(ies) (if any) and designate as primary beneficiary(ies) and contingent beneficiary(ies), if any, in the event of the insured's death, the following:

## Primary Beneficiary Designation

| Full Name (Last, First, Middle Initial) | Relationship | Date of Birth | Address (Street, City, State, Zip) | Share% |
|---|---|---|---|---|
| Petkus-Jessie-Jean | wife | 7654 | 22 Durant Rd | 50 |
| Nolan Donna | Ex wife | 19.6.58 | 20 Willow Ave Quincy 02169 | 50 |

**Payment will be made in equal shares or all to the survivor unless otherwise indicated.** **TOTAL:** 100%

In the event said primary beneficiary(ies) predecease(s) the insured, I designate as contingent beneficiary(ies):

## Contingent Beneficiary Designation

| Full Name (Last, First, Middle Initial) | Relationship | Date of Birth | Address (Street, City, State, Zip) | Share% |
|---|---|---|---|---|
| Petkus Jessica | dgt | 8/23/84 | 20 Willow Ave Quincy 02169 | 50 |
| Petkus, Justin | son | 12/1/86 | 20 Willow Ave Quincy 02169 | 50 |
| | | | | |

**Payment will be made in equal shares or all to the survivor unless otherwise indicated.** **TOTAL:** 100%

**If no beneficiary or contingent beneficiary designated shall be living following the insured's death, the amount payable by reason of the insured's death shall be payable as provided in the Group Policy.**

**Optional Elections (please check box(es) if desired)**

☐ **Unborn Child(ren)** — Any child(ren) designated as contingent beneficiary(ies) born of the marriage of my primary beneficiary, who shall be then living in equal shares or all to the survivor.

It is understood and agreed that all decisions upon questions of fact which are made in good faith by Metropolitan Life Insurance Company (MetLife) in determining unnamed contingent beneficiaries hereby designated and which are based on proof by affidavit or other written evidence satisfactory to it, shall be conclusive and shall fully protect MetLife in acting in reliance thereon.

☐ **Common Disaster** — The amount payable by reason of the insured's death shall be paid to my primary beneficiary(ies), or contingent beneficiary(ies), as applicable, only if such beneficiary(ies), is (are) living at the expiration of 24 hours following the insured's death.

OR

**Note: See Reverse Side for Important Information**

☐ **Trust(ee) Designation** (applies only if a trust has been created in an executed trust agreement)

Name of Trustee(s) ____

Address ____

and successor(s) in trust, as Trustee(s) under ____ ("Title of Agreement")

Dated ____ executed by me and said Trustee(s).

MetLife shall not be responsible for the application or disposition of the proceeds by said Trustee(s), and the receipt of the proceeds by said Trustee(s) shall be full discharge of the liability of MetLife under the Group Policy.

If this form is executed by the insured, it is understood and agreed, however, that if MetLife receives proof satisfactory to it that the aforesaid trust has been revoked or is not in effect at the insured's death, the beneficiary shall be the insured's Estate, and payment to the estate's representative based on such proof shall be full discharge of liability of MetLife under the Group Policy or certificate.

If this form is executed by the current owner (who is not the insured), it is understood and agreed, however, that if MetLife receives proof satisfactory to it that the aforesaid trust has been revoked or is not in effect at the insured's death, the beneficiary shall be the current owner, if living at the insured's death, or the current owner's estate if the current owner is not living at the insured's death, and payment to the owner or owner's representative based on such proof shall be full discharge of liability of MetLife under the Group Policy or certificate.

☐ **Trust(ee) (Under Will) Designation** (applies only if a trust has been set forth in your Will)

The trust(ee) under any last Will and Testament of mine as shall be admitted to probate.

If for any reason whatsoever no Trust(ee) under any such last Will and Testament shall be duly appointed, I hereby designate **My Estate** as beneficiary and any payment made in good faith to the legal representative of my estate shall be full discharge of the liability of MetLife under the Group Policy.

**I reserve the right to change the designated beneficiary(ies) at any time without (his/her/their) consent.**

(Please Print)

James Petkus — Name of Insured or Owner (if assigned)

781-340-5144 — Daytime Phone No.

PO Box 2142 — Address

Hanover — City; MA — State; 02339 — Zip Code

PFR Commercial Pt. KeySpan — Branch or Plant

New England — Location

[signature] — Signature of Insured or Owner (if assigned)

3-20-02 — Date Signed

p 02

Exhibit B

# BRADFORD ASSOCIATES

CERTIFIED COURT QUALIFIED DOCUMENT EXAMINERS
HANDWRITING • DOCUMENTS • DOCUMENT PHOTOGRAPHY
http://massbusiness.com/handwriting

17 Avery Square
P.O. Box 311
Needham Heights, MA 02494

(781) 444-5210

March 14, 2005
Facsimile and Certified Mail

Mrs. James Petkus
22 Durant Road
Weymouth, MA 02190-2751

RE: DOCUMENT EXAMINATION SERVICES for The James J. Petkus Case.

Dear Mrs. Petkus,

I have examined a copy of a questioned signature "James J. Petkus" - dated 3-20-02 appearing on a copy of a questioned Metropolitan Life Insurance Company "BENEFICIARY DESIGNATION" form.

The above questioned signature copy was compared with various James J. Petkus signatures, provided as standards and represented as being authentic, in order to determine whether correspondence exists.

DESCRIPTION OF EXAMINATION: The signature described above was examined at appropriate magnifications using various types of magnifiers, measuring instruments and a transparency. The following areas of graphic and other characteristics were examined and compared: baseline alignment, slant of individual letters, size, proportions, circle and loop formations, individual letter characteristics, plus overall dynamics.

FINDINGS AND OPINIONS: Significant similarities were observed between the questioned "James J. Petkus" signature copy and the various appropriate James J. Petkus signature standards. Therefore, it is my professional opinion, subject to limitations imposed by copy viewing where applicable, that it is very probable to highly probable that the questioned "James J. Petkus" signature was written by James J. Petkus (authentic).

Please note that Bradford Associates reserves the right to revaluate the above opinion pending our examination of additional original or other evidence should such become available.

Thank you for the opportunity to be of service.

Sincerely,

Charles M. Shure, QDE,CDE,PE
Forensic Document Examiner

CMS:jb
Encs.

# BRADFORD ASSOCIATES

CERTIFIED COURT QUALIFIED DOCUMENT EXAMINERS

HANDWRITING • DOCUMENTS • DOCUMENT PHOTOGRAPHY

http://massbusiness.com/handwriting

17 Avery Square
P.O. Box 311
Needham Heights, MA 02494

(781) 444-521(


## CODIFICATION OF OPINION DESIGNATION

| TERM | % SCALE |
|---|---|
| INCONCLUSIVE | 50/50 |
| MORE LIKELY THAN NOT (MLTN) | 50 - 60 |
| PROBABLE | 60 - 70 |
| VERY PROBABLE | 70 - 80 |
| HIGHLY PROBABLE | 80 - 90 |
| REASONABLE SCIENTIFIC CERTAINTY (RSC) | 90 - 99 |
| MATCH | 100 |

# BRADFORD ASSOCIATES

CERTIFIED COURT QUALIFIED DOCUMENT EXAMINERS

HANDWRITING • DOCUMENTS • DOCUMENT PHOTOGRAPHY

http://massbusiness.com/handwriting

17 Avery Square
P.O. Box 311
Needham Heights, MA 02494

(781) 444-5210

**CHARLES M. SHURE, QDE,CDE,PE**
**Handwriting and Document Examiner**

**EDUCATION AND TRAINING:**

Graduated Massachusetts Institute of Technology (SB, MIT, 1957)

Since 1979 have independently and formally studied handwriting and document examination. Completed a special course in **Document Examination Techniques and Methodology** taught by Raymond Rider, noted document examiner for over thirty years (deceased). Understudied Mr. Rider for over one year. Received certification. Studied with Charles Gersin, nationally known document examiner and past president of the National Association of Document Examiners.

Completed classes and hands on training sessions at various seminars including annual meetings of the National Association of Document Examiners, American Acadamy of Forensic Sciences plus other such organizations. Received a certificate of achievement for a document related investigative course on ultraviolet and infrared photographic techniques given by Eastman Kodak Company at Rochester, N.Y.

Completed courses on paper, ink and typography at Northeastern University. Has over thirty years of study in the fields of document/macrophotography, early paper, counterfeit currency and graphics. Studied business law at Boston University, plus evidence and expert witness testimony at Massachusetts Continuing Legal Education, Inc. seminars held at Suffolk Law School.

Attended corporate/professional society seminars and university post graduate courses, lectures and training programs covering various scientific measurement and laboratory techniques while employed as a Research and later Senior Research Engineer. Studied contracts/contract administration while employed as Senior Contracts Administrator and later Director of Programs, Contracts and Administration for a national corporation.

**PROFESSIONAL EXPERIENCE:**

Established Bradford Associates as a document examination firm in 1983.

Successfully performed a variety of authentications and comparative analyses for branches of federal, state and local government, police departments, public schools, courts, banks, insurance companies, attorneys, unions, a noted law school, universities, the judiciary, political candidates, individuals and industries, including examination of questioned documents for foreign branches of a multinational corporation and the U.S. military.

**PROFESSIONAL EXPERIENCE (continued):**

Has handled the following types of cases: Disguised and anonymous writing, guided hand and assisted signatures, cross marks, tracing and simulated writing, questioned documents (deeds, wills, real estate agreements, insurance contracts, credit slips, etc.), typewriter additions and alterations, photocopy transfers, blind entries, medical records, ultraviolet (alterations/paper), infrared (under-writing/ink detections), political lists, dating and graffiti.

Provided a unique study of attribution of historical documents.

Developed special techniques for the discovery of debossed entries and overwriting/overtyping.

**QUALIFICATIONS:**

Court qualified as a handwriting/document expert in Federal, District, Probate, Superior and Land Courts within the Commonwealth of Massachusetts, Rhode Island and Florida. Testified professionally as an expert witness before a Grand Jury.

Qualified as a handwriting/document expert by the Election Commission of the Commonwealth of Massachusetts and at various union and other arbitration hearings.

Testified a total of over fifty times.

Document macro photography has been admitted to various courts in the Commonwealth of Massachusetts and at other judicial proceedings.

**RELATED EXPERIENCE:**

1974-1982 Responsible for all aspects of graphics, photography, paper and ink for a printing company.

1968-1974 Responsible for all business, legal and contractual aspects of a multi-location commercial real estate corporation.

1957-1967 Conducted research engineering studies. Provided [illegible] scientific and technical projects.

**CLEARANCE:**

SECRET CLEARANCE last held granted by the Defense Industrial Security Clearance Office.

**LICENSES:**

Registered Professional Engineer, Mass. No. 9902

**TEACHING:**

Conducted seminars in document examination for government agencies.

Designated seminar instructor of document examination for the **Comprehensive Criminal Investigation Program of the Massachusetts Criminal Justice Training Council.**

**ORGANIZATIONS:**

National Association of Document Examiners (NADE) Vice President (1986-1988). Life member since 1996.

National Bureau of Document Examiners (NBDE) Requires court qualification. (1984 to closure.)

Massachusetts Police Fraudulent Check Association (1983-1994).

American Society of Industrial Security (ASIS).

National Stereoscopic Association.

Rotary Club of Needham, Massachusetts member for over ten years (1983-1994). Director (1987-1988). Paul Harris Fellow.

**OTHER:**

Designed and developed custom modifications and specialized equipment used to examine documents. Developed special techniques for the discovery of debossed entries and overwriting/overtyping.

**PUBLICATIONS:**

"Document Examiners' Equipment Choices (Source, Selection, Modification)", Journal of the National Association of Document Examiners, Volume 11, No. 2, May 1990.

**LIBRARY AND FACILITIES:**

Comprehensive technical library on document examination and photography including hundreds of publications of NADE, WADE, and other professional societies plus numerous professional books. A laboratory with full complement of viewing, measurement, photographic, ultraviolet and infrared equipment plus office copiers, FAX, fireproof safe and an electronic security system.

**PARTIAL CLIENT LIST:**

Some law firms include: Hale & Dorr; Nutter, McClennen & Fish; Peabody & Arnold; Sullivan & Worcester; Ropes & Gray; Gaffin & Krattenmaker; Parker, Coulter, Daley & White; Balliro, Mondano & Balliro; Law Offices of Kevin J. Reddington; O'Donnell, O'Donnell & O'Donnell; Sullivan & McDermott; Law Offices of Victor J. Koufman; Kazarosian Law Offices; Skoler, Abbott & Presser; Geogan & Geogan; Seder & Chandler; Pellegrini & Seeley; Law Offices of Craig J. Martin; Curry and Curry; Stewart T. Herrick & Associates; Serra, Jordan & Carbone; Ricklefs & Uehlein; Monheimer and Weicher; Raymond A. Cloutier Law Office; Avery, Dolley, Post & Avery; Bikofsky, Walker & Tuttle; Dimento & Sullivan; Morse & Sacks; Palmer & Simcock; Roberts & Plunkett; Avratin, Okstein, Queler & White; Adams & Blinn; Scotch & Zalinsky; Lemelman & Lemelman; Widett, Glazier & McCarthy; McDermott & Rizzo; Madan & Madan; Bolan, Frank & Graeber; Heidlage & Reece; Decoff & Grimm; Lucash, Gesmer & Updegrove; Rees & Carlson; Cosgrove, Eisenberg & Kiley; Looney & Grossman; Zalkind, Rodrequez, Lunt & Duncan; Perenyi & Klein; Law Offices of Edward A. Gottlieb; Sugarman & Sugarman; Stiles & Maio; O'Boy & Moniz; Arnowitz & Goldberg; Cooley, Manion, Moore & Jones; Public Defenders (Federal and State).

EXHIBIT C

MetLife®

A Sdr ~~~ 10-1-04

Metropolitan Life Insurance Company

Group Life Claims
P.O. Box 6115
Utica, NY 13504

Joseph A. MacRitchie, Esq.
21 McGrath Highway, Suite 303
Quincy, MA 02169

Kenneth J. DiFazio, Esq.
119 Broad Street
P.O. Box 422
Weymouth, MA 02188

**Re: Plan Participant:** **James J. Petkus (decedent)/ Claim # 1627124**
**Plan and No.:** **KeySpan Corporation / 105953**
**Amount:** **$148,800 (basic)**
**Mr. MacRitchie's Client:** **Ms. Donna M. Nolan**
**Mr. DiFazio's Client:** **Ms. Jessie-Jean Petkus**

Dear Mr. MacRitchie and Mr. DiFazio:

This is in response to the request for an administrative review of the initial claim denial. We have re-examined the entire claim file, including any additional material and information provided. For the reasons detailed below, we have determined that your clients' claims raise questions of fact and law that cannot be resolved by MetLife without exposing the Plan to the danger of double liability.

The Plan is regulated by the Employee Retirement Income Security Act of 1974, as amended (ERISA), 29 U.S.C. §§ 1001-1461. MetLife is acting in its capacity as claims fiduciary for the Plan. ERISA defines a beneficiary as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

The Summary Plan Description ("SPD")[1] at page 2 provides that "You may name whomever you wish as a beneficiary. Your beneficiary under the Basic Plan is the person or persons you have named on your beneficiary designation card. . . . Furthermore, you can change your beneficiary at any time. You must do this in writing and file it with the Benefits Department."

Ms. Petkus relies on a beneficiary designation form, dated March 20, 2002, which names her and Ms. Nolan as co-equal primary beneficiaries. Ms. Nolan has questioned whether the signature on this March 20, 2002 form, was that of the decedent at all. In addition, this form was not on file with the Plan and there is a question as to whether it was dispatched to the Plan in the decedent's lifetime.

Ms. Nolan relies on a prior beneficiary designation form dated March 20, 1984, which names her as sole primary beneficiary. Although this designation was not on file with the Plan either, Ms. Nolan submitted a copy of an interoffice memo from the Boston Gas benefits office to Mr. Petkus stating that she was his beneficiary. Ms. Nolan also contends that payment of the Plan benefits is controlled by the terms of her November 26, 1991 Judgment of Divorce, which provides, in pertinent part:

---

[1] KeySpan Corporation purchased the Boston Gas Company. Provisions in the Boston Gas Company SPD apply to these claims.

> The Husband shall maintain term life insurance for the benefit of the children during their minority in the amount of ONE HUNDRED TWENTY-FIVE THOUSAND AND 00/100 ($125,000.00) and the Wife shall be the designated beneficiary of such policy.
>
> . . . .
>
> . . . a copy of the life insurance policy provided by Husband's employer have herewith been provided to the Wife.

The decedent and Ms. Nolan had two children, Jessica and Justin Petkus.[2] At the time of the decedent's death, Jessica was 19 years old and Justin was 17 years old.

ERISA is a federal law that preempts state law divorce decrees unless they are Qualified Domestic Relations Orders ("QDROs"). A "domestic relations order" is a QDRO if it complies with the statutory requirements. ERISA, 29 U.S.C. § 1056(d)(3). The First Circuit, which includes Massachusetts, has not ruled on whether QDROs apply to employee welfare benefit plans, such as the Plan here. *Barrs v. Lockheed-Martin Corp.*, 287 F.3d 202, 208-209 & n.7 (1st Cir. 2002); *Sun Life Assurance Co. of Canada v. Sullivan*, 206 F. Supp. 2d 191 (D. Mass. 2002). *See also Metropolitan Life Ins. Co. v. Marsh*, 119 F.3d 415, 422 (6th Cir. 1997), *Metropolitan Life Ins. Co. v. Wheaton*, 42 F.3d 1080 (7th Cir. 1994).

Additionally, although, ERISA broadly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a), federal courts are divided on the issue of whether the state law doctrine of substantial compliance is preempted by ERISA. The Ninth and the Tenth Circuits have held that state substantial compliance doctrines are not be preempted. *Bankamerica Pension Plan v. McMath*, 206 F.3d 821 (9th Cir. 2002); *Peckham v. Gem State Mut.*, 964 F.2d 1043 (10th Cir. 1992). In contrast, the Seventh Circuit and the Fourth Circuit have held that the doctrine of substantial compliance is preempted by ERISA, and have applied federal common law. *Metropolitan Life Ins. Co. v. Johnson*, 297 F.3d 558 (7th Cir. 2002); *Phoenix Mutual Life Ins. Co. v. Adams*, 30 F.3d 554 (4th Cir. 1994).

The First Circuit has not ruled on the issue of whether the state law of substantial compliance is preempted by ERISA. Massachusetts' law, however, provides that there must be "substantial compliance with the provisions of a policy regulating that subject matter, and that it is of the essence of substantial compliance that the insured must have done all in his power to effect that change, leaving only some ministerial act on the part of the insurer necessary to consummate it." *Acacia Mutual Life Ins. Co. v. Feinberg*, 61 N.E.2d 122, 124 (Mass. 1945); *see also Strauss v. Teachers Ins. & Annuity Ass'n of America*, 639 N.E.2d 1106, 1109 (Mass. App. Ct. 1994)(stating that this standard varies with the circumstances of a particular case).

In sum, there is a question of fact as to whether the 2002 form is a forgery. There is also a question as to what law a court in the First Circuit would apply to determine whether the 2002 form substantially complied with the terms of the Plan. Additionally, MetLife cannot determine whether a court in the First Circuit would determine that QDROs apply to employee welfare benefit plans, and if so, whether the language in the Judgment of Divorce quoted above satisfies the requirements of a QDRO, and if it is a QDRO whether it has expired in whole, in part, or not at all because Jessica reached the age of majority. Regardless of which form is effective, the issues surrounding QDROs need to be addressed by a court.

**<u>If the 2002 Form is Effective</u>**

If a court determines that the 2002 form is not a forgery and finds that the decedent substantially complied with the terms of the Plan, then the 2002 form would be effective. Ms. Nolan and Ms. Petkus

---

We will refer to Jessica and Justin Petkus by their first names for clarity and convenience. No disrespect is intended.

would each receive one-half of the Plan benefits, as per the 2002 form, if a court finds that QDROs do not apply to employee welfare benefit plans or the Judgment of Divorce is not a QDRO, or has entirely expired.

If a court finds that QDROs apply to employee welfare benefit plans, and the language in the Judgment of Divorce satisfies the requirements of a QDRO, and the QDRO has not expired at all then Plan benefits in the amount specified, $125,000, would either be payable to Ms. Nolan, as court-appointed guardian or conservator to receive the benefits on behalf of Justin, or payable to Ms. Nolan in her individual capacity.[3] The remaining $23,800 would either be split equally between Ms. Nolan, in her individual capacity, and Ms. Petkus, or Ms. Petkus would receive the full $23,800.[4]

On the other hand, if a court determines that the Judgment of Divorce is a QDRO, but it has only expired in part because only Jessica reached the age of majority, then $62,500 would either be payable to Ms. Nolan, as court-appointed estate guardian or conservator, or payable to her in her individual capacity. The remaining $86,300 would either be split equally between Ms. Nolan, in her individual capacity, and Ms. Petkus, or $74,400 would be payable to Ms. Petkus and the remaining $11,900 would be payable to Ms. Nolan.

**<u>If the 1984 Beneficiary Designation Form is Effective</u>**

If a court finds that the signature on the 2002 form is a forgery, or the decedent did not substantially comply with the terms of the Plan, so that the 2002 form would not be effective, then the 1984 beneficiary designation would be effective. The Plan benefits would be payable to Ms. Nolan, in her individual capacity, as the sole primary beneficiary under the 1984 designation form, if a court finds that QDROs do not apply to employee welfare benefit plans, or the Judgment of Divorce is not a QDRO, or has entirely expired.

If a court finds that QDROs apply to employee welfare benefit plans and the language in the Judgment of Divorce satisfies the requirements of a QDRO, then a court will have to determine whether the QDRO has expired in whole or in part. If a court finds that it is a QDRO and has not expired at all, then Plan benefits in the amount specified, $125,000, would either be payable to Ms. Nolan, as court-appointed estate guardian or conservator authorized to receive the benefits on behalf of the children, or in her individual capacity under the 1984 designation. The remaining $23,800 would be payable to Ms. Nolan, in her individual capacity.

On the other hand, if a court determines that the language in the Judgment of Divorce satisfies the requirements of a QDRO, but it has expired in part, then $62,500 would either be payable to Ms. Nolan, as court-appointed estate guardian or conservator authorized to receive the benefits on behalf of Justin, or in her individual capacity, and the remaining $86,300 would be payable to Ms. Nolan, in her individual capacity.

Because this matter raises questions of fact and law that cannot be resolved by MetLife without exposing the Plan to the danger of double liability, MetLife is required by law to initiate what is called an interpleader action to permit a court to decide between the claims. Before doing so, however, MetLife will give you the opportunity to try to resolve the matter in order to preserve the benefits from litigation costs and fees. Please inform this office in writing within thirty days of the date of this letter whether you believe you can reach a compromise of your claims. If you cannot reach an agreement, or you do not timely contact this office in writing, you will be notified of the lawsuit in due course. If you can reach an agreement, you may submit a duly-executed settlement agreement setting forth the details of your compromise regarding the referenced benefit plan sufficient to permit MetLife to draw the checks correctly, and also releasing any and all claims against MetLife, KeySpan Corporation, and the KeySpan

---

[3] It unclear from the language of the Judgment of Divorce whether payment would be made to Ms. Nolan in her individual capacity or whether payment would be made to her as a court-appointed estate guardian or conservator authorized to receive money on behalf of her child.

[4] It is also unclear whether Ms. Nolan would be deemed to be entitled to half of the remaining amount, or whether the amount in the Judgment of Divorce would be deemed to include Ms. Nolan's share under the 2002 form.

Welfare Plan. If these documents are acceptable to MetLife, the proceeds will be paid in accordance with your compromise. If they are not, we may ask you to sign an additional release.

If you have any questions, you may contact us at 1-800-638-6420 ext 6846.

Sincerely,

Group Life Claim
Team S
1-800-638-6420 ext 6846
Fax: 315-792-6522

Cc: Ms Donna M Nolan
Ms Jessie-Jean Petkus

MetLife® EXHIBIT D

**Metropolitan Life Insurance Company**

**Group Life Claims**
**P.O. Box 6115**
**Utica, NY 13504**

June 3, 2004

Kenneth J DiFazio, Esq
Attorney at Law
P O Box 422
Weymouth MA 02188-0003

VIA FAX AND MAIL

RE: Insured: James J Petkus
Group No. 105953
Claim No.: 1627124
Your client: Jessie Jane Petkus

Dear Mr DiFazio:

This is in response to your letter dated May 12, 2004 regarding the referenced group life insurance claim.

We acknowledge receipt of your client's appeal to our denial of her claim to these proceeds. We are referring this claim to our administrative review section for their recommendation and will advise you further once their review is complete.

In response to your several questions, please be advised of the following:

> The MetLife Recordkeeping unit presently maintains Keyspan's beneficiary data but has on file only those records supplied to it by Keyspan benefits. Therefore, Recordkeeping's letter dated January 10, 2004 reported acurately that they had no record of a beneficiary designation for Mr Petkus.
>
> Thereafter, Donna Nolan submitted to us a copy of a designation, signed by our insured and dated March 20, 1984, that names her as sole beneficiary. Submitted with this form was a copy of an interoffice memo from the Boston Gas benefits office to Mr Petkus stating that Donna Nolan was his named beneficiary. We contacted the location where Mr Petkus was employed to verify whether or not any beneficiary records remained in their files and were informed that they had none.
>
> Although your client provided a photocopy of a designation dated March 20, 2002, the Keyspan benefits plan requires that a designation of beneficiary be filed with the benefits department. The Summary Plan Description booklet ("SPD") that includes this requirement was provided by Keyspan to its employees (see enclosed pages from the booket).

We hope this information is helpful to you. Should you have further questions in this regard, please feel free to contact this office.

Sincerely,

Group Life Claim
Team S
1-800-638-6420 ext 6846
Fax: 315-792-6522

EXHIBIT E

*MetLife Recordkeeping Center*
*P.O. Box 6129*
*Utica, NY 13504-6129*
*1-800-906-6779*
*TDD 1-800-984-8652*

***KeySpan***

January 10, 2004

Donna Nolan Petkus
C/O 22 Durant Road
South Weymouth, MA 02190

RE: No Beneficiary on File

Dear Donna Nolan Petkus:

We wish to extend our condolences to you for the loss of James J. Petkus.

Since there was no beneficiary of record, the proceeds are payable in accordance with the beneficiary provision of the group contract. This provision requires payment to be issued upon approval of these benefits to the first of the following: the estate of James J. Petkus, spouse, child(ren), and finally parent(s). *(Please note: If any of these individuals have had a name change, please provide a copy of the legal document(s) involved, such as the divorce decree, marriage certificate, etc.)*

According to our records, your anticipated claim amount is $148,800.00. However, the final payment amount will be determined following review of a completed death claim form by our claim office, and may vary from the figure shown.

To help you, we have established the MetLife Survivor Assistance Program…Delivering the Promise (DTP), which provides personal assistance and dedicated services to beneficiaries. A specially-trained DTP Specialist will contact you shortly to answer questions and offer assistance. The enclosed brochure fully describes the program and details the concerns your DTP Specialist can help you address, including claim filing with MetLife and other insurance companies. However, if you wish to file a claim directly, please follow the instructions below.

To file a claim for these proceeds, please include a completed and notarized affidavit for claim consideration form, along with Estate papers naming an executor or administrator of the above named estate. The Social Security Numbers of each person listed on the affidavit should be included. Also, please have the person or persons whose names appear first in the line of succession of the affidavit complete the enclosed claimant's statement and return it in the enclosed envelope along with the certified death certificate for James J. Petkus, unless previously submitted. Upon receipt of the form(s), the claim will be reviewed within ten business days for payment.

A determination on the payment of the benefits cannot be made until all of the information necessary to review the claim has been received.

If you have any questions about the submission of this claim, please contact our Life Claims Unit at 1-800-638-6420, Monday through Friday, between 8:00 a.m. and 5:00 p.m. Eastern Time.

Sincerely,

Rose LaBuz
Customer Service Representative
MetLife Recordkeeping Center

Enc: Affidavit for Claim Consideration Form
Claimant's Statement/TCA Form
Return Envelope
Brochure

WD16

EXHIBIT F

EXHIBIT VI

LIFE INSURANCE

The Husband shall maintain term life insurance for the benefit of the children during their minority in the amount of **ONE HUNDRED TWENTY-FIVE THOUSAND AND 00/100 ($125,000.00)** and the Wife shall be the designated beneficiary of such policy.

Husband shall not borrow any cash values or equity of any policy during the minority of the children.

Wife shall maintain life insurance for the benefit of the children during their minority in the amount of **TEN THOUSAND AND 00/100 ($10,000.00)** and the Husband shall be the designated beneficiary of such policy.

A copy of the investment policy with a face value of $25,000.00 and a copy of the life insurance policy provided by Husband's employer have herewith been provided to the Wife.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 04-12420-RGS

**Metropolitan Life Insurance Company**
**Plaintiff**

**vs.**

**Jesse-Jean Petkus,**
**Donna M. Nolan,**
**Defendants**

**AFFIDAVIT OF JESSIE-JEAN PETKUS**

I, Jesse-Jean Petkus, on oath, depose and state as follows:

1. I was married to James J. Petkus from December 16, 1999 until his decease.

2. On the evening of March 20, 2002 I was with my husband at our residence at which time he produced a Metropolitan Life Insurance Company Beneficiary Designation form which he requested that I fill out per his instructions. (Exhibit A)

3. After completing the Beneficiary form James J. Petkus signed the form in my presence and gave me a carbon copy of the form to place in our files located at our residence. James J. Petkus placed the original in his briefcase and indicated to me that he would file it with his employer.

4. I have never seen a beneficiary form signed by the Decedent designating Donna M. Nolan as the beneficiary of the plan.

5. James J. Petkus never mentioned receiving a Summary Plan Description form either from Boston Gas or Keyspan and I never observed one in his or our possession at our residence.

6. My Husband's decision to change the beneficiary designation on the plan in March of 2002 meant that approximately $75,000 from the plan would be designated for Ms. Nolan along with a separate John Hancock Life Insurance plan of $25,000.00 which he left for Ms. Nolan. The combination of the two benefits substantially complied with his financial

Office of
KENNETH J. DI FAZIO
Attorney At Law
PO Box 422
WEYMOUTH, MA 02188
(781)335-2160

obligations to his children pursuant to the terms of the separation agreement while insuring that both his children and myself were equally taken care of upon his decease.

Signed under the pains and penalties of perjury this 6th day of September 2005.

Jessie-Jean Petkus

COMMONWEALTH OF MASSACHUSETTS

Norfolk, ss September 6, 2005

On this 6th day of September, 2005, before me, the undersigned notary public, personally appeared Jessie-Jean Petkus, proved to me through satisfactory evidence of identification, which was her Massachusetts driver's license, to be the person whose name is signed above, and acknowledged to me that she signed it voluntarily for its stated purpose.

Notary Public
Comm. Exp.

Office of
KENNETH J. DI FAZIO
Attorney At Law
PO Box 422
WEYMOUTH, MA 02188
(781)335-2160

CERTIFICATE OF SERVICE

I, Kenneth J. DiFazio hereby certify that I have this 6th day of September, 2005 via first class mail, and via facsimile, sent the enclosed Opposition To Summary Judgment, Memorandum In Support Thereof, Statement of Concise Facts, and Affidavit of Jessie-Jean Petkus to:

Joseph A. MacRitchie
21 McGrath Highway
Suite 303
Quincy, MA 02169

Kenneth J. DiFazio

DATE: 9-6-05

Office of
KENNETH J. DI FAZIO
Attorney At Law
PO Box 422
WEYMOUTH, MA 02188
(781)335-2160